# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUAN VALENTIN HERNANDEZ,<br>    Plaintiff,<br><br>    v.<br><br>STAR VIEW ENTERPRISES, INC., et al.<br>    Defendant. | Case No. 15 C 266<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juan Valentin Hernandez filed a Motion for Summary Judgment ((Pl.'s Mot.) [dkt 34]), which was denied in a previous order on April 4, 2016 [dkt 41]. This opinion sets out the reasons for that ruling.

## JURISDICTION

Jurisdiction exists pursuant 28 U.S.C. § 1331 based on the existence of a federal question under the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 216(b). (Am. Compl. ¶ 2.) [Dkt 28.] There is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the Illinois Minimum Wage Law ("the IMWL") claim, 820 Ill. Comp. Stat. 105/1, *et seq*. (Am. Compl. ¶ 2.) Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the alleged actions giving rise to the claims occurred at the Defendants' facility in Cook County, Illinois. (Am. Compl. ¶ 3.) The parties do not contest jurisdiction or venue. (Ans. Am. Compl. ¶¶ 2-3.) [Dkt 29.] The parties consented to the jurisdiction of a magistrate judge. [Dkt 13.]

## PROCEDURAL HISTORY

Plaintiff Juan Valentin Hernandez ("Hernandez") filed this suit against Defendants Star View Enterprises, Inc., Spiro Tzivas, and George Zaharopolous (collectively "Defendants") on January 12, 2015. (Compl.) [Dkt 1.] Hernandez was allowed to join Kathie Zaharopolous as a defendant in the case on November 6, 2015. (Order, Nov. 6, 2015.) [Dkt 27.][1] Hernandez claims violations of the FLSA and the IMWL based on Defendants' alleged failure to pay overtime. (Am. Compl. ¶¶ 23-30.) Defendants denied both claims. (Ans. Am. Compl. ¶¶ 23-30.)

Hernandez moved for summary judgment (Pl's. Mot) and filed a memorandum of law in support of his motion (Pl.'s Mem. [dkt 35]). Defendants filed a response in opposition to Hernandez's motion (Defs.' Resp.), and Hernandez replied (Pl.'s Reply [dkt 39]).[2]

Before discussing the merits of the motion, Hernandez's objections to Defendants' Response and Kathie's affidavit must be addressed. Hernandez filed objections to Defendants' Response and asked the court to disregard the Response in its entirety. (Pl.'s Objections at 1.) [Dkt 40.] In particular, Hernandez objects to Defendants' responses to ¶¶ 6-8, 10, 11, 13, 19-21, and 25. (*Id*. at 2.) Hernandez argues that Defendants' denials are void of citation, although many of Defendants' responses cite to the record. (*See* Defs.' LR Resp.) For the responses that do not cite to the record or are unresponsive, go beyond the scope of the statement, or are argumentative, the court will

---

[1] Kathie Zaharopolous's name was spelled "Kathy" in the case caption based on the spelling in Hernandez's motion to join her. (Pl.'s Mot. to Join.) [Dkt 24.] Kathie clarified in her deposition that she spells her name "Kathie," which is how this opinion will refer to her. (*See* Def.'s Resp., Ex. D at 20-21.) [Dkt 37.] Because George and Kathie Zarahopolous have the same last name, they will be referred to here by their first names. No disrespect is intended.

[2] The facts are taken from Hernandez's Local Rule 56.1(a)(3) Statement of Undisputed Facts, (Pl.'s LR Stmt. [dkt 36]), and from Defendants' Response to Plaintiff's 56.1(a)(3) Statement of Undisputed Facts (Defs.' LR Resp. [dkt 38]).

discount the problematic responses as necessary. As Hernandez points out, this court is well aware of the what is proper under the Local Rules. (Pl.'s Objections at 2 (citing *Gittings v. Tredegar Corp.*, No 08 CV 4972, 2010 WL 4930998, at *1 n.4 (N.D. Ill. Nov. 29, 2010).)

Kathie's affidavit (Defs' Resp., Ex. E), submitted after her deposition, is a different issue. Hernandez cites *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002), and argues that Kathie's affidavit must be disregarded because it "supplements and sometimes contradicts her previous sworn deposition testimony, and was provided for the sole purpose of bolstering the Defendants' response to the Plaintiff's summary judgment motion." (Pl.'s Objections at 5.)

"*Beckel* and cases like it involved contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry University, Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). The court in *Castro* recognized that few honest witnesses testify without at least occasional need to correct or clarify, and that to disregard as a sham every correction would "usurp the trier of fact's role in determining which portion of the testimony was most accurate and reliable." *Id*. at 751-52.

Hernandez does not point to any discrepancies that would meet the standard set out in *Castro*. In her deposition, Kathie was asked questions regarding whether she hired Hernandez and about her attempts to have him sign an employment contract. (Pl.'s LR Stmt., Ex. F, Deposition of Kathie Zaharopolous at 9, 34-35.) Kathie's affidavit clarified those responses where the questions or answers lacked specificity. (Kathie Affidavit ¶¶ 5-6.) Regarding the affidavit's statements about Hernandez working 54 hours per week on an hourly basis (*id.* ¶ 7), her deposition addressed that point as well (Kathie Dep. at 19, 41-42). The one apparent difference is that instead of saying that *every* employee was paid hourly as she did in the deposition (including Hernandez by implication),

3

the affidavit expressly states that Hernandez was paid hourly. The affidavit also states the exact amounts Hernandez was paid, subject to her rounding. (Kathie Affidavit ¶ 8.) In her deposition, Kathie discussed the rates at which hostesses were paid ("like $9 an hour, 10.") before being asked about pay for a morning cook (Hernandez's position), who, she testified, "gets paid a little more." (Kathie Dep. at 16.) She also testified about her understanding of the FLSA requirement of time-and-a-half for work over forty hours and testified that she rounded up for easily-managed payments. (*Id.* at 22-23, 35.) Again, the factual statments in her affidavit provided little more than clarification of vague aspects of her testimony.

The court will, however, strike ¶ 10 (a statement about Hernandez's understanding of how he was compensated) as lacking foundation, and the first sentence of ¶11 (an argument about a purported letter that Kathie disavowed at her deposition). (Kathie Affidavit ¶¶ 10-11.) The last sentence of paragraph 11 was directly addressed in Kathie's deposition and presents no new or different information. (*See* Kathie Dep. at 20-22.)

**LEGAL STANDARD**

Under both the FLSA and the IMWL, an employer is required to pay an employee one-and-one-half times the employee's regular rate of pay as overtime compensation for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1); 820 Ill. Comp. Stat. 105/4a(1). These provisions of the FLSA and the IMWL are substantially the same, and if the FLSA provision is complied with, so too is the IMWL. *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir. 1993); *see also Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010). The Illinois Administrative Code also provides that the FLSA regulations are to be used as guidance when interpreting the IMWL.

Ill. Admin. Code tit. 56, § 210.120 (2005).

> The Supreme Court has discussed the calculation of the "regular rate":
>
> The keystone of Section 7(a) [29 U.S.C. §207(a)] is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance.
> As we have previously noted, the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed. . . . It is not an arbitrary label chosen by the parties; it is an actual fact.

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Although employees may be paid in a variety of ways – such as piece-rate, salary, or commission – overtime compensation still must be computed based on the hourly rate derived therefrom. *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 673 (7th Cir. 2010) (citing 29 C.F.R. § 778.109). In such cases, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. That calculated regular rate does not include the required overtime premium. *Unikis-Negro*, 616 F.3d at 674-75.

Summary judgment on all or part of a claim or defense is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To oppose a motion for summary judgment successfully, the responding party must submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c). A genuine dispute of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the responsibility of identifying applicable evidence. *Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.

1996).  In determining whether a genuine dispute of material fact exists, the court construes all facts and draws all reasonable and justifiable inferences in favor of the nonmoving party.  *Anderson*, 477 U.S. at 255.

Because Hernandez is seeking summary judgment, he has the burden of showing that there is no genuine dispute about a material fact and that he is entitled to judgment as a matter of law. Defendants' argument (Defs.' Resp. at 6) that their denials of the allegations in the complaint must be taken "at face value" to create an issue of fact is, however, simply wrong.  A non-movant must go "beyond the pleadings" to demonstrate that there is evidence upon which a trier of fact could properly find in the non-movant's favor.  *Modrowski v. Pigatto*, 712 F. 3d 1166, 1168-69 (7th Cir. 2013) (quoting *Anderson*, 477 U.S at 251).

## DISCUSSION

Defendants in this case operate the View Restaurant ("the View"), which is open 24 hours. (Defs.' LR Resp. ¶ 1.)  George and Tzivas are owners and managers of the View, with the authority to hire and fire employees, direct and supervise the employees, and manage the payroll, including directing payments to employees and deciding employee compensation.  (*Id.* ¶¶ 2-3.)  Tzivas generally worked the night shift.  (*Id.* ¶ 3.)  Kathie is a manager of the View.  (*Id.* ¶ 4.)  During the time Hernandez was employed there,  Kathie set the work schedules for the View's employees and was in charge of payroll, including distributing paychecks.  (*Id.*)  Kathie hired Hernandez, decided his rate of pay, and terminated him.  (*Id.*)

Hernandez worked as a cook at the View from March 2011 through January 1, 2015, and he was not exempt from the maximum hours provision of the FLSA. (Defs.' LR Resp. ¶ 5.)  Hernandez

typically worked 54 hours per week, usually the 6:00 a.m. to 3:00 p.m. shift, although he also states that he routinely worked longer hours, which Defendants dispute. (*Id.* ¶¶ 12-13.) Defendants set Hernandez's schedule when Kathie posted a handwritten schedule in the kitchen each week. (*Id.* ¶ 14; Pl.'s LR Stmt., Ex. I, Schedule.)

Hernandez did not use any method to record his work hours, except that when he received his pay – which was entirely in cash – he was required to sign a piece of paper that included his name, date, hours, and the total amount he was paid. (Defs.' LR Resp. ¶¶ 15-18.) Defendants testified that they rounded up the total amount paid to avoid making payments in cents, but did not round up the hourly rate of pay. (*Id.* ¶ 9.) Hernandez asserts that Defendants did not maintain wage and hour records, whereas the Defendants contend that they no longer have the records because they were destroyed when a roof leaked. (*Id.* ¶¶ 19-22; Pl.'s LR Stmt., Ex. C, Deposition of Spiro Tzivas at 30-31; Ex. E, Deposition of George Zararopolous at 21; Kathie Dep. at 18.)

Although Hernandez states Defendants did not discuss his rate of pay with him or have a written agreement, Defendants dispute that and state that Kathie discussed his pay rate and tendered a contract for him to sign. (Defs.' LR Resp. ¶ 11.) When Hernandez was asked, "And when you were hired, what was your understanding of your compensation," he responded, "When I started working there, we didn't set up nothing until I started working. . . . I started working, I got my first week's pay. I mean, it was reasonable, so – you know, I agree." (Defs.' LR Resp., Ex. B, Deposition of Juan Valentin Hernandez at 9.) When directly asked if he deemed himself to be paid by the hour, he stated, "I don't know about that," and recounted how he signed a paper each time he was paid that showed the hours he worked and how much he was paid. (Hernandez Dep. at 11-13.) Hernandez also testified that his hours mostly were correct on the sheet he signed because he almost

always worked the same hours, and when they were not correct, he would tell them and "[t]hey would pay [him] the hours correctly." (*Id.* at 11-16.)

Hernandez and Defendants dispute how Hernandez was paid: Hernandez characterizes his payment as a salary of $1300 every two weeks with an unchanging rate of pay, while Defendants characterize his compensation as hourly and point to his receiving additional pay for working more and less pay for working less. (Defs.' LR Resp. ¶¶ 6, 10.) Defendants cite to George's deposition, in which he testified that "[Hernandez] was getting – he was getting 10-something an hour. 10.60, I would think. And then the overtime money. He was getting almost 15, $16 an hour." (George Dep. at 28.) Kathie's testimony is that Hernandez was paid hourly, as were all employees, and that Hernandez was paid a little more than the typical hourly employee. (Kathie Dep. at 16, 22-23, 41-42.) Her affidavit states exact hourly rates of $10.60 and $15.98. (Kathie Affidavit ¶ 8.) Finally, Defendants cite to Hernandez's own testimony that if he worked extra, he was paid more, and if he worked less, he lost pay, as evidence that he was not salaried. (Hernandez Dep. at 15-17, 19.)

Hernandez also states that Defendants did not change his rate of pay during his employment and he was paid at the rate of $650 per week. (Pl.'s LR Stmt. ¶ 7.) Defendants dispute that, citing Hernandez's testimony about how his hours were tracked, how he was paid more for extra work, and paid less for less work, and also citing Kathie's affidavit about his pay. (Defs.' LR Resp. ¶ 7.) Hernandez asserts he was docked $150 for missing one day of work and paid $20 or $25 for two hours of extra work. (Pl.'s LR Stmt. ¶ 10.) Defendants, however, state that he was not docked $150 and interpret Hernandez's testimony to be that he was paid $20 or $25 per each extra hour worked. (Defs.' LR Resp. ¶¶ 7, 10.)

The parties' respective briefs argue as if the facts lay out a clear cut pattern. Hernandez

8

argues as if the facts indisputably demonstrate that he was paid a fixed, unchanging salary, while Defendants argue as if the facts indisputably show Hernandez was paid on a traditional hourly basis and time-and-a-half for overtime. As the facts described above demonstrate, however, the evidence on the motion is far from clear cut. Hernandez's Reply, for example, states that "Defendants paid Hernandez $1,300 every two weeks throught the entirety of his employment." (Pl.'s Reply at 1.) That ignores Hernandez's own testimony that he would sometimes correct his hours on the pay sheet and be paid accordingly, and that when he worked more he would be paid more. The evidence simply does not eliminate questions of fact.

Alternatively, Defendants contend that they qualify under an exception in 29 U.S.C. § 207(f), which allows an employer to include regular and overtime compensation in a flat rate in cases where the employment necessitates irregular hours of work, so long as there is a contract specifying a regular rate of pay not less than minimum wage for forty hours and not less than one-and-one-half that rate for the overtime hours, as well as a guaranty of pay for not more than sixty hours. (Defs.' Resp. at 7-8.) They do not, however, explain why Hernandez's hours were "irregular" when the evidence suggests that he regularly – but not always – worked 54 hours per week. It is undisputed that there is no written contract. Presumably to explain that fact, Kathie testified that she tried numerous times to get Hernandez to sign an employment contract, but he refused to do so. (Kathie Dep. at 34-35.) There is a suggestion that other employees had signed such employment agreements. (*Id.* at 29.) Hernandez, however, testified that he never saw an employment agreement. (Hernandez Dep. at 13-14.)

The picture is also complicated by the absence of time and payment records, attributable, Defendants contend, to damage from a leaky roof. That is not, of course, Hernandez's fault; it is the

employer's responsibility to maintain records. The single record that is submitted is apparently one of the schedules Kathie handwrote each week for the kitchen employees. (Pl.'s LR Stmt., Ex. I.) It lists each employee, the day of the week, as well as the specific hours they were scheduled to work. (*Id.*) The evidence does not explain whether such a document was used solely as a schedule, or was also used to determine pay, and, if so, how it relates to the amount Hernandez was paid for that time.

The role of the court on summary judgment is not to weigh the evidence or to make credibility determinations. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Where there are genuine disputes of fact, summary judgment is not appropriate.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [dkt 34] is denied. A bench trial remains set for April 26, 2016.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

Dated: April 18, 2016