# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUAN VALENTIN HERNANDEZ, | |
| Plaintiff, | Case No. 15-cv-0266 |
| v. | |
| STAR VIEW ENTERPRISES, INC. d/b/a THE VIEW RESTAURANT, SPIRO TZIVAS individually; GEORGE ZAHAROPOLOUS, individually, and KATHIE ZAHAROPOLOUS, individually. | Magistrate Judge Geraldine Soat Brown |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juan Valentin Hernandez ("Hernandez") claims that defendants Star View Enterprises, Inc., Spiro Tzivas, George Zaharopolous, and Kathie Zaharopolous (collectively, "Defendants") owe him unpaid wages for overtime work. A bench trial was held on April 26, 2016, at which the following witnesses testified in person or by video deposition: Hernandez, Tzivas, George Zaharopolous, Kathie Zaharopolous, and Theofanis (Ted) Skoudianos. One exhibit was admitted into evidence and one exhibit was used as a demonstrative. The parties also stipulated to certain facts in the Final Pretrial Order. [Dkt 50.] At the conclusion of the evidence, the parties rested. Closing arguments were given the following day, April 27. The briefs submitted on Hernandez's motion for summary judgment were taken as trial briefs. (Pl.'s Mem. [dkt 35]; Defs.'

Resp. [dkt 37]; Pl.'s Reply [dkt 39].) Having considered all of the evidence, the court makes the following findings of fact and conclusions of law.

## JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), because one of Hernandez's claims arises under Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. There is supplemental jurisdiction over Hernandez's claim arising under the Illinois Minimum Wage Law (IMWL), 820 Ill. Comp. Stat. 105/1, *et seq*., pursuant to 28 U.S.C. § 1367. Jurisdiction is not in dispute.

## BACKGROUND

Hernandez brings claims under the FLSA and IMWL, alleging that he is entitled to unpaid overtime wages, specifically the overtime premium. He alleges that Defendants failed to pay him the overtime premium for the hours he worked over forty per week because Defendants never calculated Hernandez's regular hourly rate of pay.

Defendants Star View Enterprises, Inc. d/b/a The View Restaurant, Spiro Tzivas ("Tzivas"), George Zaharopolous ("George"), and Kathie Zaharopolous ("Kathie") deny that Hernandez was improperly paid.[1] Defendants state that they properly paid Hernandez overtime, that by agreement with Hernandez they paid him $10.60 per hour for forty hours per week and $15.98 per hour for an additional fourteen hours each week, and that any additional hours Hernandez worked were compensated at the rate of $15.98 per hour.

---

[1] Because George and Kathie Zarahopolous have the same last name, they will be referred to here by their first names. No disrespect is intended.

**STIPULATIONS**

In the Final Pretrial Order, the parties stipulated to the following.

Star View Enterprises, Inc. d/b/a The View Restaurant ("The View") is an Illinois corporation doing business within this judicial district. The View is an enterprise as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce or the production of goods within the meaning of 29 U.S.C. § 203(s)(1)(A). The View employed Hernandez as an "employee," as defined by the FLSA and IMWL. From 2012 through 2014, The View earned an annual gross volume of sales or receipts in excess of $500,000.

George is an owner and manager of The View. George had the authority to, and did, hire and fire The View's employees; direct and supervise the work of The View's employees; sign on The View's checking accounts, including payroll accounts; direct payment to employees; and make or participate in decisions regarding employee compensation for The View.

Tzivas is an owner and manager of The View. Tzivas had the authority to hire and fire employees; direct and supervise the work of employees; sign on The View's checking accounts, including payroll accounts; direct payment to employees; and make or participate in decisions regarding employee compensation.

Kathie is a manager at The View who had the authority to, and does, hire and fire employees; direct and supervise the work of employees; discipline employees; direct payment to employees; and make or participate in decisions regarding employee compensation. Kathie set the schedules of work for The View's employees and was

responsible for tracking employees' hours of work. Kathie was in charge of payroll for The View and actually distributed paychecks.

Defendants employed Hernandez as a cook from March 2011 through January 1, 2015. Hernandez was not exempt from the maximum hours provision of the FLSA. Hernandez regularly worked more than forty (40) hours per individual workweek.

Defendants regularly scheduled Hernandez to work the first shift, from the hours of 6:00 A.M. to 3:00 P.M., six days per week. Defendants paid Hernandez his wages entirely in cash. Defendants did not require Hernandez to use time cards, a sign-in sheet, or any method to record his hours of work. Defendants' employees who worked in the front of the restaurant were required to use time cards. Defendants' only method of tracking Hernandez's hours of work was through visual inspection by Kathie and the owners, including Tzivas and George.

Defendants do not have any records of wages paid to Hernandez. Defendants do not have any records of Hernandez's hours of work. Defendants do not have any records of Hernandez's rate of pay. Defendants understood overtime pay to mean that an employee must be paid at one and one half times the employee's regular hourly rate for each hour worked in excess of forty.

## COURT'S FINDINGS OF FACT

The witnesses uniformly testified – consistent with the stipulation – that Hernandez regularly worked as a cook at The View 54 hours per week and Defendants regularly paid Hernandez $1300 every two weeks, that is, $650 per week. The central issue is whether the $650 that Hernandez received was based on 40 hours a week plus 14

hours overtime, as Defendants contend, or was a flat amount that did not include any overtime premium for the 14 hours of overtime that Hernandez worked every week. The evidence overwhelmingly supports Hernandez's position.

As the stipulations reflect, Defendants employed Hernandez in a very casual arrangement. Kathie admitted that they did not submit information about Hernandez's employment to the Illinois Department of Employment Security because he was paid in cash. They did not keep any records of his hours and did not require him to punch the time clock that was in the restaurant the entire time he was employed there. Hernandez testified that when he received his bi-weekly pay he would sign a paper indicating the amount of the pay and the number of hours, but, as described further below, Defendants do not have and did not produce any of those papers.

Defendants' contention that they paid $10.60 for the first 40 hours and $15.98 for overtime hours makes neither practical nor mathematical sense. That level of precision is inconsistent with the casual, undocumented nature of Hernandez's employment. Although Kathie testified to the $10.60/$15.98 pay rate on direct examination, on cross-examination she was unable to make the calculation work out to $650 for 54 hours or $1300 for two weeks. She explained the discrepancy by saying that they "rounded" up to $1300 because they paid cash, but that raises the question why they would round up the payment at the end while, they assert, they were paying Hernandez the un-rounded hourly rates of "$10.60" and "$15.98" rather than rounded rates like $10.00 or $16.00.

Hernandez testified that Defendants hired him to work nine hours per day, six days per week, and was paid $1300 every two weeks. At trial, George testified that Hernandez was paid $10.60 for 40 hours and $15.98 for overtime, but previously, in

5

answering an interrogatory, George stated that Hernandez's compensation was $650 per week.

George also testified that he and Ted Skoudianos hired Hernandez and that Kathie set Hernandez's "rate of pay" *after* George and Skoudianos told her what they wanted to pay him. It is simply not credible that George and Skoudianos offered Hernandez $10.60 per hour and $15.98 for overtime. Rather, the court finds that Defendants hired Hernandez at a flat rate of $650 per week for 54 hours per week, and, as George's testimony suggests, Kathie reverse-calculated a "rate of pay" from that for purposes of this case.

Defendants emphasize the testimony that on occasion Hernandez would work more than 54 hours and be paid for those hours. Hernandez testified that about once per month he would work no more than two additional hours. He would then tell George or Skoudianos about it, and would be given $20 to $25 extra. Skoudianos testified that Hernandez would be paid $16 per hour extra in cash or "sometimes $20" if they were busy or on a holiday, but that did not happen often. Kathie testified that Hernandez came in one Monday for two hours and was paid $32, but Defendants have no records to reflect those hours or those payments. Kathie testified that Hernandez "rarely" worked more or fewer than the 54 hours. The court concludes that the occasions that Hernandez worked more than 54 hours and was paid more than $650 were rare exceptions over the course of his almost four years' employment.

Likewise, Defendants' witnesses testified in a conclusory way that Hernandez's pay would be reduced if he did not work the expected hours, but they have no specific, documented examples. On the contrary, Kathie testified that Hernandez would be

"docked" if he did not show up for work, but his pay would not be reduced if he were late by only an hour or less.

In light of the fact that Defendants never made any effort to keep track of the number of hours Hernandez worked, it is not credible that they in fact calculated his pay at $10.60 per hour for the first forty hours and then did a calculation of $15.98 for each overtime hour put in.

Kathie admitted that Defendants have no documents showing that Hernandez was paid at the rate of $10.60 per hour or that he agreed to be paid at that rate. Defendants produced a handful of contracts with some employees that show regular time rates and overtime rates. Kathie testified that she tried to get Hernandez to sign such an agreement but he refused. She also testified, however, that the contract she tendered to him was blank and did not have any pay rates filled in.

Skoudianos testified he knew he knew Hernandez's overtime rate was $16 per hour because that he saw "pay slips" on the desk in the office showing Hernandez got $16 per hour for overtime, although his recollection of the format of those pay slips was hazy and he has no idea where those slips are now. Defendants have stipulated that they have no records of Hernandez's time or pay and no such documents were produced.

Defendants explain their failure to produce any records by saying that the records were damaged by water from a leaking roof. They say that all of the records were kept in a box or boxes on top of a cooler in the kitchen. When they went to search for documents in June 2015 (more than five months after Defendants had answered the complaint in this case), they discovered that the roof had leaked and the records were wet and moldy. Kathie testified that they then simply discarded all of the records because they could not

have mold in the kitchen. She also testified that they never made any effort to remove the documents to another location such as their lawyer's office so that they could be searched for relevant documents, and never made any effort to look through the records to see if documents relating to this lawsuit might be salvageable.

It is hard to credit that all of Defendants' pay and hour records for their employees were in a cardboard box on top of a cooler in the kitchen and that no one noticed that the roof leaked into the kitchen. Even assuming for the sake of argument that Defendants' records were damaged by a leak, Defendants breached their duties under the Federal Rules of Civil Procedure by failing to make any effort whatsoever to see if relevant documents could be salvaged. It is not necessary to determine whether sanctions are appropriate, however, because that failure reinforces the lack of credibility in the Defendants' position. Presumably, if there had been *any* document showing that Hernandez was paid at a $10.60 hourly rate, Defendants would have made some effort to locate it and preserve it for production – especially if there had been pay slips signed by Hernandez showing a pay rate of $10.60 per hour.

In summary, the court concludes that Hernandez was paid at a flat rate of $650 per 54 hour week and that Defendants' argument that they calculated and paid time-and-a-half for overtime is not supported by the evidence and is simply not credible.

Considering the different time limits of the FLSA and IMWL, Hernandez has calculated the amount of his claimed overtime pay for each week he worked at The View from January 2012 through December 2014 ($12,979.12), and the amount of liquidated damages provided by the FLSA for two years of unpaid overtime ($8,596.56), as well as the amount of interest to be applied under the IMWL for payments due from January

2012 ($8,675.78). (Pl.'s Demonstrative Ex. 1.) [Dkt 54.] Defendants have not contested those calculations.

Defendants' counsel acknowledged during closing argument that, in light of the stipulated facts, if there is corporate liability for Star View Enterprises, Inc., there is also individual liability for Tzivas, George, and Kathie.

**CONCLUSIONS OF LAW**

The FLSA and IMWL required Defendants to pay Hernandez a premium of one and one-half times his regular hourly rate of pay for each hour over forty that he worked. 29 U.S.C. § 207; 820 Ill. Comp. Stat. § 105/4a(1). The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek. 29 C.F.R. § 778.109. It is not based on what the employer declares to be the rate or even what the parties agree is the rate; rather, it is based on the rate actually paid. 29 C.F.R. § 778.108. Here, the undisputed evidence shows that Hernandez was paid $650 per week for 54 hours of work, with only a few unidentified exceptions. Therefore, his rate of pay was $650 divided by 54 hours, that is, $12.04 per hour.

An employer cannot lawfully agree with its employees that they will receive the same sum, comprising both straight time and overtime compensation, in all weeks without regard to the number of overtime hours worked in any workweek. 29 C.F.R.

§ 778.500(b). Likewise, an employer does not comply with the law by paying a fixed salary or paying a lump sum for overtime. *Id.* [2]

The court finds that Defendants violated the FLSA and the IMWL by the arrangement under which they paid Hernandez $650 per week without calculating and paying an overtime premium for the hours he worked over 40 hours per week.

It is an employer's duty to make, keep, and preserve accurate records of its employees' wages and hours. 29 U.S.C. 211(c). Where the employer has breached that duty, the employee carries his burden to show that the FLSA has been violated "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see also Tyson Foods, Inc. v. Bouaphakeo,* ____U.S. ____, 136 S. Ct. 1036, 1047 (2016).

Here, there is undisputed evidence that Hernandez worked more than 40 hours in a week, and that the amount of overtime was 14 hours per week except for rare occasions that were neither specified nor documented. Defendants provided no proof that would support a reducing the amount of overtime below 14 hours per week.

The FLSA provides for an award of liquidated damages in the amount equal to the unpaid overtime premium. 29 U.S.C. § 216(b). Awarding Liquidated damages are presumptively appropriate for FLSA violations. *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 (7th Cir. 2010). The court may decline to award liquidated damages if

---

[2] At the closing argument, Defendants' counsel acknowledged that the exception in 29 U.S.C. § 207(f) does not apply here. (*See also* Memorandum Opinion and Order, April 18, 2016 at 9.) [Dkt 47.]

the employer demonstrates that the failure to pay the overtime due was in good faith and the employer had reasonable grounds for believing that the failure was not a violation of the FLSA. 29 U.S.C. § 260. Here, Defendants have not made such a showing. The court finds that liquidated damages in an amount equal to the damages due under the FLSA should be awarded. *See Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 404-05 (7th Cir. 1999) (stating that liquidated damages are "mandatory" unless the employer makes the showing required by § 260).

Hernandez has not claimed that Defendants' violation of the FLSA was willful, so as to extend the statute of limitations from two to three years. *See* 29 U.S.C. § 255(a). Accordingly, the applicable limitations period on Hernandez's FLSA claim is two years.

The IMWL provides for recovery of three years' of unpaid overtime premium. 820 Ill. Comp. Stat. § 105/12(a). In addition, the employer is liable for "damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." *Id.* Courts have awarded that payment in addition to the liquidated damages available under the FLSA. *See, e.g., Calderon v. J. Younes Const. LLC,* No. 12 C 3793, 2013 WL 3199985, at *8 (N.D. Ill. June 23, 2013). Defendants argue that what they characterize as "punitive damages" under the IMWL should be awarded only if the employer's conduct was "willful." (Defs.' Resp. at 8-9.) "But the statutory language denominating the 2% monthly charge as punitive damages was deleted in 2006 . . . . [T]he plain sense of the statutory revision is that the charge is now automatic." *Reynoso v. Motel LLC,* 71 F. Supp. 3d 792, 800 (N.D. Ill. 2014) (including both liquidated damages under the FLSA and the 2% monthly charge under the IMWL in the judgment).

Although Defendants contest Hernandez's entitlement to any amounts claimed, they have not contested the mathematical calculations in Hernandez's Demonstrative Exhibit #1. [Dkt 54.] Accordingly, the court finds Defendants are jointly and severally liable to Hernandez for the following amounts:

1. Under the FLSA:

    (a) the overtime premium for overtime hours worked between January 13, 2013 and December 27, 2014: $8,596.56; plus
    (b) liquidated damages of $8,596.56.

2. Under the IMWL:

    (a) the overtime premium for overtime hours worked between January 15, 2012 and December 27, 2014: $12,979.12; plus
    (b) 2% monthly charge on unpaid overtime premium: $8,675.78.

Hernandez's damages total $30,251.46 ($12,979.12 + $8,596.56 + $8,675.78).[3]

The FLSA provides for an award of reasonable attorneys' fees and costs to a prevailing plaintiff. 29 U.S.C. § 216(b). Hernandez will also be awarded an amount to be proved as reasonable attorneys' fees and costs.

## CONCLUSION

It is hereby ordered that judgment be entered in favor of plaintiff Juan Valentin Hernandez and against defendants Star View Enterprises, Inc., Spiro Tzivas, George Zaharopolous, and Kathie Zaharopolous, jointly and severally, in the amount of $30,251.46. Plaintiff will also be awarded his reasonable attorneys' fees and costs in an

---

[3] The IMWL overtime premium of $12,979.12 includes the two years covered by the FLSA.

amount to be determined. That future award does not affect the finality of the judgment ordered here. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988).

It is so ordered and adjudged.

_____
Geraldine Soat Brown
United States Magistrate Judge

May 11, 2016